### 8399

### STATE *EX REL.* HEMINGWAY v. STATE DEMOCRATIC EXECUTIVE COMMITTEE.

PRIMARY ELECTIONS—CERTIORARI—JURISDICTION WAIVER.—Filing a notice of contest in a primary election before the county executive committee after the time prescribed by the rules of the party is a question of jurisdiction of the person, and where the contestee remains and participates in the trial of the contest on the merits after the question of jurisdiction is decided against him, this question is waived. The issue of waiver being one of fact is presumed to be decided against petitioner by the action of the State executive committee.

*Ex parte Sanders,* 53 S. C. 478, *distinguished from this case.*

MR. JUSTICE WOODS, *with whom concurs* MR. JUSTICE HYDRICK, *thinks the rule of waiver of jurisdiction should not be applied to cases in special tribunals, and that under the facts McConnell could not have served his notice within the time prescribed by the rules, and his notice of appeal carried the whole matter to the State executive committee.*

Petition in the original jurisdiction of this Court by J. A. Hemingway for writ of *certiorari* to the State Executive Democratic Committee.

*Messrs. Capers G. Barr* and *Hunter A. Gibbes,* for petitioner.

*Mr. Walter Hazard,* contra.

21—93

January 3, 1913.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY.    This is an application to the Court, in the exercise of its original jurisdiction, for a writ of *certiorari,* requiring the State Democratic Executive Committee, to certify and return to the Supreme Court, a true copy of all the proceedings, in the contested election of J. A. Hemingway against T. S. McConnell.

The facts and the grounds upon which the petitioner seeks relief, are thus stated by one of his attorneys:

"The office of county treasurer of Georgetown county, is filled by appointment of the Governor.    The Governor appoints the candidate who is nominated in the Democratic primary election.    J. A. Hemingway and T. S. McConnell, were candidates for this nomination, in the primary election held on August 27, 1912.    On the evening of August 27, 1912, after the votes had been counted by the managers of elections, it was currently reported that T. S. McConnell, had received a few more votes than J. A. Hemingway, and that the former was probably nominated.    At twelve o'clock noon, August 29, 1912, the County Democratic Executive Committee, of Georgetown county, assembled for the purpose of tabulating the returns and declaring the result of the primary, in accordance with rule 6 of the Democratic party. Both candidates were present with their respective attorneys.    Before the result of the election was declared, J. A. Hemingway asked for a recount of the ballots in all the boxes, except Georgetown 1 and 2 and Andrews.    The committee proceeded without objection, to make the recount. According to the manager's return, Hemingway received 37 votes at Choppee poll, and McConnell 36 votes.    The recount showed that Hemingway received 52 votes and McConnell 21 votes.    This gave Hemingway a majority of 22 votes in the entire county, whereupon he was officially declared the nominee.    There was no objection on the part

of McConnell or his attorney.   Three unfolded ballots were called to the attention of the meeting by the chairman, but this fact has no bearing on the controversy.   Nothing further developed, until September 9, 1912.   On this date, fourteen days after the election, and twelve days after Hemingway had been declared the nominee, McConnell served his .petition, alleging fraud in Choppee poles 5 and 6.   The petition set forth allegations of after discovered evidence of fraud.   It alleged that 15 ballots for McConnell, had been taken from the boxes and 15 votes for Hemingway had been inserted while the boxes were in the custody of Manager Williams, before the meeting of the county executive committee.   A return was filed by Hemingway, demurring to the petition on the ground, that the notice of contest had not been served within two days, after the election, in accordance with rule 7; that contestants had proper remedy by appeal, and that Hemingway had been elected and so officially declared, by the county executive committee.   Thereafter on September 12, 1912, a hearing was had before the committee.   There was an adjournment until September 19, 1912.   The petition, return and traverse were read and considered.   Affidavits as to facts and other evidence were submitted.   No evidence was introduced supporting the allegations in the petition, as to the taking out of the boxes, fifteen ballots for Hemingway.   The evidence purported to show sundry irregularities.   Hemingway contends that no fraud was shown, but if fraud were shown, it was not sufficient to change the result, as declared by the committee on August 29, 1912. On this date, September 19, 1912, the committee rescinded its former action on August 29, 1912, and declared McConnell the nominee.   On September 21, 1912, Hemingway served his notice of appeal to the State Democratic Executive Committee, from the findings of the county committee of date September 19, 1912.   On September 23, 1912, McConnell filed his notice of appeal, from the findings of

the County Democratic Executive Committee on August 29, 1912, in declaring Hemingway the nominee.

On October 1, 1912, the State Democratic Executive Committee assembled in Columbia, considered the appeal of Hemingway, overruled the same, and affirmed the action of the County Democratic Executive Committee, in declaring on September 19, 1912, that McConnell was the nominee.

The matter comes now before this Court, on a writ of *certiorari*. The petitioner, Hemingway, prays that the record of the case be reviewed, that the action of the State Democratic Committee be set aside, and that J. A. Hemingway be declared the nominee.

The petitioner, Hemingway, contends that the action of the County Democratic Committee on August 29, 1912, in declaring him the nominee was final; that no protest or contest was filed by McConnell, within two days after August 29, 1912, as required by rule 7; that the contest filed later on September 9, 1912, on grounds of fraud came too late; that the county committee was then without jurisdiction of the matter, and their action of date September 19, 1912, was illegal; that the State committee should have set aside this finding of September 19, 1912, and should have declared Hemingway the nominee."

Section 282, Code of Laws (1912), provides, that primary elections shall be governed by the rules and regulations of the political party, holding such election.

Rule 6 of the Democratic party is as follows: "The County Democratic Executive Committee, shall assemble at their respective courthouses, on the morning of the second day after the election before 12 o'clock m., to tabulate the returns and declare the result of the primary, so far as the same relates to members of the General Assembly and county officers." * * *

Rule 7 provides that the "protests and contests for county offices shall be filed within two days after the election, with the chairman of the county executive committee, and said

executive committee shall hear and determine the same, at its first meeting thereafter." * * *

Article VI, Constitution of the Democratic party, contains the provision, that "all contests for all nominations, including county offices at primary elections, shall be heard first, by the county executive committee of the county, in which such irregularities may have occurred, and may be reviewed by the State executive committee, whose action shall be final." * * *

If the failure of T. S. McConnell, to file his notice of contest within two days after the election, must be regarded as jurisdictional in its nature, it nevertheless related to the person, and not the subject matter, and was waived when the said candidates thereafter, participated in the contest upon its merits. *State* v. *Moore,* 54 S. C. 556, 32 S. E. 700.

In that case the Court used the following language: "It is contended, however, that the petitioners had no notice of any protest of the election, before the board of county canvassers, and, therefore, they cannot be affected by any action which said board took, in reference to such protest. But as a matter of fact, it appears that at least one of the petitioners, David M. Humphreys, was duly notified, for it is so alleged in the return and admitted by the demurrer. But, in addition to this, it also appears by the return, that the petitioners appeared by counsel, before the board of county canvassers, cross-examined the witnesses, and participated in the argument on the merits. In view of this, the petitioners cannot avail themselves of the fact (if it be a fact), that they were not served with formal notice of the protest. It is true that the petitioners first entered a special appearance, and objected to respondents exercising any judicial functions whatever, insisting that their duties were purely ministerial; but when such objection was overruled—properly, as we have seen—they remained and participated in the hearing and discussion of the case, on its merits. By so doing they waived any benefit of such special appearance,

and cannot now be heard to say, that they had no notice when, as matter of fact, they did have full notice of the action of the board, and might and should have availed themselves of their right of appeal from such action."

The question of waiver was dependent upon the facts, and it will be presumed, that the State Democratic Executive Committee, decided all facts upon which its decision necessarily rested, in favor of the respondent, which findings are not the subject of review in this proceeding; and, if there was waiver, then it conclusively follows, that the writ of *certiorari* cannot be granted.

The petition relies upon *Ex parte* Sanders, 53 S. C. 478, 31 S. E. 290. In the first place, that decision was not rendered by the Supreme Court, but by Mr. Chief Justice McIver at chambers. In the second place, the action of the county executive committee when that decision was rendered was *final* as to county offices, and no appeal was then allowed from its decision. The rules, however, have been changed in this respect.

It is, therefore, the judgment of this Court, that the petition be dismissed.

Mr. Justice Watts *concurs.*

Mr. Justice Fraser *concurs in the result.*

Mr. Justice Woods, *concurring in the result:*

The case of the petitioner rests upon the allegations that he was declared by the county executive committee of the Democratic party the nominee for the office of treasurer of Georgetown county on 29th August, 1912, and that the action of the county committee in revoking this declaration and declaring the respondent the nominee was without legal effect, for the reason that the party rules require that notice of protest must be filed within two days after the election, whereas, the respondent did not file his notice of protest

until 9th September, 1912, fourteen days after the election. On this ground the petitioner insists that the State executive committee disregarded the plain mandate of the party Constitution and rules when it dismissed his appeal from the last declaration of the county committee in favor of the respondent.

When the contest of respondent came on for a hearing, the petitioner objected to the jurisdiction of the committee on the ground that only under a notice of protest filed two days after the election could the committee entertain the controversy. When this objection was overruled, the petitioner contested the matter before the committee on the merits. The question whether entering into the merits under these conditions was a waiver of the objection to the jurisdiction is an important one, when it is considered that both the county executive committee and the State executive committee are special tribunals, and that if the petitioner had refused to enter into the merits and allowed the matter to go by default against him, he would have been at a great disadvantage before the State executive committee in the presentation of his appeal. It is true that it has been held in *Garrett* v. *Herring Co.*, 69 S. C. 278, 48 S. E. 254, and a number of other cases, that if a defendant pleads to the merits after his plea to the jurisdiction has been overruled, that the plea to the jurisdiction will be regarded waived. But the rule is a hard one, and should not be extended. It has been limited by the recent case of *Barfield* v. *So. Cotton Oil Co.*, 87 S. C. 322, 69 S. E. 603, and it should not be extended to special tribunals where, as in this case, it is not perfectly clear that the power exists to grant full relief from errors as to the jurisdiction.

But there are other grounds on which it seems to me perfectly clear that the petition should be dismissed. There can be no doubt that by the statute enacted on the subject, the General Assembly intended to give primary elections a legal status, and it follows that the persons interested therein

have a right to the writ of *certiorari* when the tribunals designated by the party law for the decision of controversies have not proceeded according to the statute law and the rules and constitution of the party which have been given by the statute the force of law. But it ought to be a clear case of infringement of the party rules to warrant the Court in interfering, especially when the ground of complaint relates to party procedure rather than the substance of the matter. It would require a forced construction of the rule that notice of protest should be filed within two days after the election, to make it apply to this case. The respondent, McConnell, on the face of the returns made by the managers, was the nominee, and it could not have been contemplated by the rule that he should file a notice of contest within two days after the election, and thus attack the validity of an election in which he was *prima facie* successful. It seems clear, therefore, that rule 7, requiring notice of protest to be filed within two days after the election, did not apply, that there was no rule which covered the case, that McConnell was entitled to reasonable time after the recount, and that *prima facie* the Court should accept the conclusion of the party authorities as to the reasonableness of the time within which the respondent might attack the election for fraud.

There is another view equally strong against the petitioner. Although the returns of the managers indicated the election of McConnell, no protest was filed by Hemingway; but two days after the election the county executive committee met and, at the instance of Hemingway, made a recount of the votes in certain boxes. Under this recount Hemingway was declared elected. McConnell was present and made no objection to the recount or the declaration in favor of Hemingway. But ten or twelve days afterwards he served notice of appeal to the State committee. This appeal carried the whole matter, including the issues of fact, to the State committee and gave them jurisdiction to pass

upon the election, even if the notice of protest fourteen days after the election was given too late by the respondent to avail him before the county executive committee. It is true that the action of the State committee was in favor of a dismissal of the appeal of Hemingway from the action of the county committee in reversing their first action and declaring McConnell to be the nominee. But both appeals raised questions of fact on which the result of the election depended, and the dismissal of one meant the sustaining of the other. Looking away from the form to the substance, the State committee had before it an appeal by respondent from the county committee involving the question whether as a matter of fact the county committee should have declared the petitioner or the respondent the party nominee, and their decision, whatever its form, on that issue of fact, was final under the Constitution and rules of the party.

For these reasons I think the petition should be dismissed.

MR. JUSTICE HYDRICK *concurs.*